UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**OSCAR INSURANCE COMPANY OF FLORIDA,**

        **Plaintiff,**

vs.

**BLUE CROSS AND BLUE SHIELD OF FLORIDA, INC.,** d/b/a Florida Blue; **HEALTH OPTIONS INC.,** d/b/a Florida Blue HMO; and **FLORIDA HEALTH CARE PLAN INC.,** d/b/a Florida Health Care Plans,

        **Defendants.**
_____/

CASE NO.:   6:18-cv-1944-PGB-TBS

## PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO THE STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA

Pursuant to the Court's Order dated May, 13 2019 (Dkt. 94) Plaintiff Oscar Insurance Company of Florida ("Oscar") submits this reply to the new authority and arguments in support of its Motion to Dismiss ("Motion," Dkt. 81) that Defendants Blue Cross and Blue Shield, Inc., Health Options Inc. and Florida Health Care Plan Inc. (collectively, "Florida Blue") included in its Response to the Statement Of Interest Of The United States Of America on May 8, 2019 ("Response," Dkt. No. 92).

*First*, Florida Blue cites two new cases—*Owens v. Aetna Life & Casualty Co.*, 654 F.2d 218 (3d Cir. 1981), and *SEC v. National Securities, Inc.*, 393 U.S. 453 (1969)—to suggest general adoption of its overbroad reading of what constitutes the "business of insurance" for

1

purposes of McCarran-Ferguson immunity. In fact, neither case supports Florida Blue at all: *Owens* confirms that exclusivity arrangements can "offend federal antitrust law," and *National Securities* highlights the flaws in Florida Blue's reliance on *Thompson v. New York Life Ins. Co.*, 644 F.2d 439 (5th Cir. 1981). **Second**, Florida Blue asserts for the first time that a Florida statute, Fla. Stat. § 626.311 ("Section 626.311"), mandates its coercive practice of complete, statewide termination of any broker that violates Florida Blue's exclusivity arrangement. But Section 626.311 does not even address insurers' appointment (or termination) of brokers; instead, it addresses the irrelevant topic of state licensing.

In directing the Court to this plainly inapposite authority, Florida Blue seeks to distract from the obvious reality: Florida Blue's exclusivity policy is not the business of insurance, it is coercive, and in no event is it immune from antitrust scrutiny under the narrow construction the Supreme Court requires of the McCarran-Ferguson Act.

## MEMORANDUM OF LAW

**I.    Florida Blue Still Cannot Establish That Its Exclusivity Arrangements Are The "Business of Insurance."**

Relying primarily on a distorted reading of *Sanger Insurance Agency v. HUB International, Ltd.*, 802 F.3d 732 (5th Cir. 2015), Florida Blue has argued that its exclusivity arrangements with brokers are immune from antitrust liability under the McCarran-Ferguson Act because they are "the business of insurance." Motion at 6. Florida Blue now seeks to lend credibility to its flawed arguments by citing two new cases, *Owens* and *National Securities*. *See* Response at 6, 8. However, these cases are readily distinguishable, provide Florida Blue no support, and in fact instruct that the McCarran-Ferguson exemption be interpreted far more narrowly than Florida Blue proposes.

Florida Blue purports to rely on *Owens* for the proposition that its exclusivity arrangements are "routine dealings between insurers and brokers or agents," which "most" courts agree "constitute the business of insurance." Response at 6. But *Owens* held merely that exclusive agency is not necessarily "equated with a boycott," 654 F.2d at 233. The *Owens* court did not analyze whether—let alone find that—exclusivity arrangements are "routine dealings" that can qualify for McCarran-Ferguson immunity. Indeed, if anything, *Owens* suggests the very opposite: the Third Circuit recognized that exclusive agency "might offend federal antitrust law" and "is subject to scrutiny under the antitrust laws as to its purpose and effect." *Owens*, 654 F.2d at 233 & n.10.

Florida Blue's citation of *National Securities* to prop up its misplaced reliance on *Thompson* is similarly unavailing. The Government showed that *Thompson*—the sole case Florida Blue cites to support its contention that its exclusivity arrangements are an integral part of the policy relationship between an insurer and insured—does not survive the Supreme Court's subsequent decision in *Pireno*. *See* Statement of Interest of the United States of America at 11 ("DOJ Br.," Dkt. 89). In its Response, Florida Blue seeks to revive *Thompson* by claiming both it and *Pireno* rely "central[ly]" on *National Securities*. *See* Response at 8. Not so. *Thompson* cites *National Securities* just **once**, and only as the "most frequently cited" case about the McCarran-Ferguson Act. *See Thompson*, 644 F.2d at 442-43. Moreover, *Thompson* did not rely at all, let alone "central[ly]," on the reasoning in *National Securities* that *Pireno* subsequently distilled. Rather, the *Thompson* court focused on the unrelated (and, to it, "dispositive") fact that the agents at issue were not "force[d] . . . to engage in activities

3

unrelated to insurance." *Thompson*, 644 F.2d at 444.  That myopic analysis cannot and does not survive *Pireno*.  *See* DOJ Br. at 11.

At bottom, Florida Blue's belatedly-cited case law does little more than put the lie to its characterization of the McCarran-Ferguson Act as "wholly separate" from the antitrust laws, *see* Response at 2-3.  *National Securities* expressly states that the McCarran-Ferguson Act is concerned primarily "with the relationship between insurance ratemaking and the antitrust laws." *National Securities*, 393 U.S. at 459; *see also* 15 U.S.C. § 1013(a) (McCarran-Ferguson addresses when "the Act . . . known as the Sherman Act" and other antitrust laws "apply to the business of insurance").  *Owens* underscores that the "limited exemption" to the antitrust laws "creat[ed]" by McCarran-Ferguson is subject to "the general rule that even express exemptions from antitrust laws are narrowly construed." *Owens*, 654 F.2d at 224.  And the cases thus confirm both that Florida Blue's casting of McCarran-Ferguson as a "jurisdictional doctrine," Response at 2, is a distinction without a difference and also that McCarran-Ferguson is not broad enough to exempt Florida Blue's anticompetitive conduct from antitrust scrutiny.

**II.     Florida Statute § 626.311 Does Not Address—And Certainly Does Not Mandate—Florida Blue's Coercive, All-Or-Nothing Broker Terminations.**

Oscar has explained that a particularly coercive aspect of Florida Blue's exclusivity arrangements is how Florida Blue terminates any violating broker across all lines of business in the entire state.  Am. Compl. ¶¶ 6, 54-56, 65, 101.  Florida Blue has said that its complete, statewide termination practice cannot be "coercion" because it is unilateral conduct, Motion at 13-15, but Oscar has demonstrated that the text of the McCarran-Ferguson Act, case law, and

4

scholarly commentary instruct otherwise. Pl.'s Opp. to Mot. to Dismiss at 9-10.[1] Now, Florida Blue argues for the first time that complete, statewide termination practices operate "by virtue of" Section 626.311 and, therefore, cannot be coercive. Response at 10.

Section 626.311 does not support Florida Blue's assertion at all. Section 626.311 addresses the "scope of license[s]" for different insurance brokers. *Id.* Florida statute defines a license as "a document issued by ***the department or office*** authorizing a person to be appointed to transact insurance or adjust claims for the kind, line, or class of insurance identified in the document." Fla. Stat. § 626.015(11) (emphasis added). Critically, a "license" is distinct from an "appointment," which is "the authority given ***by an insurer or employer*** to a licensee to transact insurance or adjust claims on behalf of an insurer or employer." *Id.* § 626.015(4) (emphasis added). In other words, Section 626.311 addresses state licensing, which is irrelevant here, and not appointment by Florida Blue or any other insurer. As such, Section 626.311 plainly does not—indeed, it cannot—mandate Florida Blue's coercive practice of complete, statewide termination of any broker that violates Florida Blue's exclusivity arrangement. Florida Blue's contention to the contrary simply underscores how desperate it is to avoid competition on the merits.

## CONCLUSION

For the foregoing reasons and for the reasons set forth in Oscar's Opposition to Florida Blue's Motion to Dismiss, Oscar respectfully requests that the Court deny Florida Blue's Motion to Dismiss.

---

[1] Further, Florida Blue has not even attempted to dispute (nor could it) that the plain and antitrust-specific meanings of "coercion" and "intimidation" do not require concerted action, *see* DOJ Br. at 14-15.

Respectfully Submitted:     May 17, 2019

                              FRANCIS M. MCDONALD, JR., ESQ.
Florida Bar No. 0327093
SARAH A. LONG, ESQ.
Florida Bar No. 0080543
MCDONALD TOOLE WIGGINS, P.A.
111 N. Magnolia Avenue, Suite 1200
Orlando, FL 32801
Telephone: (407) 246-1800
Facsimile: (407) 246-1895
fmcdonald@mtwlegal.com
slong@mtwlegal.com

/s/ Tara L. Reinhart
 STEVEN C. SUNSHINE (admitted *Pro Hac Vice*)
TARA L. REINHART (admitted *Pro Hac Vice*)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Avenue, NW
Washington, D.C. 20005
Telephone: (202) 371-7000
Facsimile: (202) 393-5760
steve.sunshine@skadden.com
tara.reinhart@skadden.com

PAUL M. ECKLES (admitted *Pro Hac Vice*)
MICHAEL H. MENITOVE (admitted *Pro Hac Vice*)
MATTHEW LISAGAR (*Pro Hac Vice Admission to be applied for*)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
4 Times Square
New York, NY 10036
Telephone: (212) 735-3000
Facsimile: (212) 735-2000
paul.eckles@skadden.com
michael.menitove@skadden.com
matthew.lisagar@skadden.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of May, 2019, a true and correct copy of the foregoing document was filed electronically via the Court's CM/ECF Filing System, which will send a notification of such filing (NEF) to all counsel of record.

/s/ Tara L. Reinhart

Tara L. Reinhart
*Counsel for Plaintiff*
*Oscar Insurance Company of Florida*